# Mabe et al. v. Commonwealth.

June 23, 1939.

V. H. Jones, Judge.

Stokes A. Baird, Dowling & Baird, Davis Williams, Richard Garnett and J. Wood Vance for appellants.

Hubert Meredith, Attorney General, Wm. F. Neill, Assistant Attorney General, and H. Appleton Federa for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Floyd and Thelma Mabe, husband and wife, were jointly indicted for the offense of selling spirituous liquors without having first obtained a permit allowing the legal sale. Section 2554b-150, 1938 Supp. Kentucky Statutes.

Upon a trial the jury returned a verdict of guilty as to Floyd, assessing a penalty of $100 fine, but finding

Thelma not guilty. Judgment was entered; motion for a new trial overruled, and Floyd has presented motion for an appeal.

Proof of the alleged whiskey sale was to the effect that the transaction took place in a trailer attached to an Oldsmobile, and officers making the arrest took charge of the trailer and car. Under Section 2554b-151 they held the same subject to the orders of the court. The section referred to declares under what circumstances property used in illegal liquor traffic may be considered contraband, providing method of its disposition.

Following the verdict and judgment against Floyd, Thelma, his wife, filed her intervening petition, asserting ownership of both car and trailer, and Joel Gillenwater, in a like petition asserted a lien for $125, unpaid balance due on the trailer, which he asked to be protected in case title should be adjudged in the Revenue Department, as is provided may be done under the statute.

The court upon hearing denied Thelma's right to the car and trailer, and vested title in the Revenue Department. He did not pass on the question as to whether Gillenwater's lien was or was not valid and superior, but directed the car and trailer sold ''subject to all valid liens against same.'' From this order both Thelma and Gillenwater have prosecuted an appeal, it being shown on trial that the two vehicles were of more than $500 in value.

The proof showed that some time in the early part of January, Kitchen, an inspector for the Revenue Department, went to a place on the highway where the car and trailer were parked. He went into the trailer, Floyd and Thelma both being present, and purchased two half-pints of whiskey; gave Floyd a five dollar bill and received some paper money change, Thelma furnishing Floyd fifty cents to make the correct change. The whiskey cost him $1.50. Later, Kitchen obtained a warrant and with fellow-officers, and a sheriff, went back and arrested Floyd and Thelma and took charge of the car and trailer. It was shown, and not denied, that appellant had no state permit.

The officers found tacked up in the trailer a special $25 United States Internal Revenue stamp, marked ''Re-

tail Liquor Dealer,'' and which was current. This was introduced on the trial of the case and exhibited to the jury. Officers who were with Kitchen testified that Floyd, after his arrest, said that he sold the whiskey to Kitchen, who wanted it for a friend.

Floyd admits that he had the whiskey in the trailer, and it is shown that the bottles had the requisite U. S. Government and State seals and tax stamps. His version of the matter was that he knew Kitchen; knew that he was an officer; that Kitchen came to the trailer and the two began talking about a mutual friend, who it seems was in jail. Kitchen asked if he ''reckoned he could get a half-pint in to Joe. I told him I didn't know whether he could or not, and when he got ready to go he picked up a pint and says, 'I'll be seeing you,' and left.''

He explains that he made no objection because he knew Kitchen was an officer ''and could have taken it all.'' He admitted possession of the government tax stamp, indicating that in order to avoid some supposed trouble with the U. S. Government, he purchased the stamp. He said that he did not know how the receipt got into the trailer.

Mrs. Mabe admits she was present when Kitchen was in the trailer on the occasion but did not see or hear any part of the transaction as detailed by either Kitchen or appellant. She did not see any money pass, nor did she supply any change. Her testimony was quite vague as to her knowledge of the presence of the Government stamp tacked up in the trailer.

The foregoing is the evidence, except such as may be more particularly adverted to later. In Floyd's motion and grounds for a new trial, among others, it was charged that the court had admitted incompetent evidence over appellant's objection, and that the court gave erroneous and prejudicial instructions, and these are the points urged in the brief for appellant as reasons why the judgment should be reversed.

Thus far it may be gathered by the reading that the court has concluded to and has granted the motion for appeal, which makes it manifest that the judgment is to be reversed. This result will obviate the necessity of doing no more than making mention of the first two contentions of appellant.

The commonwealth, over objection at the time the testimony was being given, introduced four or five witnesses who testified that they knew the reputation of appellant in the respect, and his reputation was that of an illegal seller of whiskey. After the commonwealth closed, and during appellant's examination, the court withdrew this character of evidence from the jury's consideration, on the ground that the statute which permitted such proof to go to the jury, had been repealed by the Alcoholic Control Act of 1938, Kentucky Statutes Supp. 1938, Section 2554b-97 et seq. Nevertheless appellant is arguing that this did not remove the poisonous effect from the minds of the jury, and that he was seriously prejudiced.

Since the judgment is to be reversed on another ground we feel sure there will be no objection on this ground on another trial, hence no further comment need be indulged. The contention is forcefully made that instruction No. 2, as given by the court, was prejudicially erroneous. That instruction reads:

"The holding of any Federal permit to traffic alcoholic beverages without the corresponding requisite State and local license shall in all cases raise a prima facie presumption that the holder of such Federal permit is trafficking in alcoholic beverages in violation of the Alcoholic Beverage Control Law of the State of Kentucky, *but this fact would not be taken by you as positive proof of the defendants or either of their guilt.*"

Omitting from the above such words as are emphasized by italicization, the language employed is the language of Section 2554b-165, 1938 Supp., Kentucky Statutes.

Counsel for appellant are urging that the instruction is erroneous, because the court failed to advise the jury as to the legal meaning and import of the term "a prima facie presumption," and failed to advise the jury of what part or what section or sections of the "Alcoholic Beverage Control" law was or were being violated by presumption, in the holding of the alleged Federal dealer's permit or license. A more serious objection is urged to the use by the court of the underscored words in the quoted instruction. It is said that by this the jury was told that "prima facie presumption," was almost "positive" evidence. This was to some extent

laying down a measure by which the jury was to weigh and consider the presumptive fact.

Since we have determined that the court was in error in giving the whole of the instruction, it is not necessary to discuss the two objections above suggested, and in approaching a discussion of the question, we have been unable to find cases in the jurisdiction wherein the question was squarely and fairly raised.

In the case of Sizemore v. Com., 140 Ky. 338, 131 S. W. 37, 40, which was tried upon an indictment for violation of the local option laws, and in which we held the evidence was insufficient to uphold conviction, we referred to the statute which made the possession of a government permit prima facie evidence of guilt and said:

> "Therefore, when there is a prosecution under this section, the commonwealth may prove that the accused had a government license, and if there is other evidence conducing to show a violation of the statute, the court may, in addition to instructing the jury in the usual form under such an indictment, further instruct them that the fact that the accused at the time he committed the offense charged had this license is prima facie evidence of his guilt. The mere fact, however, that the accused had such license is not in itself sufficient to sustain a conviction. There must be other evidence showing a violation of the statute."

However, a close examination of the question presented in that case, discloses that it was wholly unnecessary to write into the opinion the quoted language. We have taken the trouble to go to the record and briefs filed in the Sizemore case, and the only question presented for decision was the sufficiency of the evidence to take the case to the jury. A like instruction was given, but in the commonwealth's brief we find the statement that "appellant is making no objection to the instructions."

However this may be, in the recent case of Botnick v. Com., 266 Ky. 419, 99 S. W. (2d) 188, 189, the question here presented was squarely decided, and while not in words overruling the obiter in the Sizemore case, its effect is to nullify that portion to which we adverted, supra. In the Botnick case accused was being tried

under Section 1199, Kentucky Statutes, denouncing the offense of knowingly receiving stolen property. The section provides that the possession of goods which have been stolen, shall be prima facie evidence of guilt.

While we found in that case, as we do here, there was no escape from the conclusion that the evidence was sufficient not only to take the case to the jury, but to sustain the verdict, we reversed the case on the ground that faulty instructions had been given. One of them (No. 3) was as follows:

"I may say that you are further instructed that the possession of any stolen goods by a Defendant should be of itself prima facie evidence of guilt." In condemning this instruction the court said:

"By instruction No. 3 the jury were told that the possession of any stolen goods should be of itself prima facie evidence of the guilt. It is true that Section 1199, Kentucky Statutes, so provides, but, with certain exceptions not here material, it has never been deemed proper in this state to instruct on the weight of evidence, Smith v. Commonwealth, 122 Ky. 444, 91 S. W. 1130; Martin v. Commonwealth, 223 Ky. 762, 4 S. W. (2d) 419; or to call attention to any particular fact and indicate its importance, Commonwealth v. Delaney, 29 S. W. 616, 16 Ky. Law Rep. 509; or to single out specific facts or groups of facts and give them undue importance; Tines v. Commonwealth, 77 S. W. 363, 25 Ky. Law Rep. 1233; Murphy v. Commonwealth, 205 Ky. 493, 266 S. W. 33; Urban v. Commonwealth, 196 Ky. 775, 245 S. W. 852. Other courts take the position that, inasmuch as the inference to be drawn from the evidence is strictly a matter for the jury, the trial court should not instruct on the question. 17 R. C. L. p. 72; Gravitt v. State, 114 Ga. 841, 40 S. E. 1003, 88 Am. St. Rep. 63 * * *. It follows that instruction No. 3 should not have been given."

The case appears to us to be conclusive of the question presented with relation to instruction No. 2, in the instant case, so it follows that the Floyd Mabe judgment is reversed with directions to grant him a new trial consistent herewith.

A reversal of his case requires us to reverse so much of the court's judgment in the Thelma Mabe case

as adjudges that title to the automobile and trailer is "hereby vested in the Alcoholic Control Board," and it is so ordered.

As to the appeal of Joel Gillenwater, we find that there is nothing for us to decide, since the court did not adjudge for or against his claim on lien. The judgment merely recited that the title vested in the Board is subject to all valid liens.

Judgment reversed.